## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

Dr. Edward Lundy Baety,

                    Plaintiff,

                                 Case No. 1:23-cv-4619-MLB

v.

DeKalb County School District, et al.,

                    Defendants.

_____/

## <u>ORDER</u>

The Magistrate Judge issued a Report and Recommendation saying this Court should grant Defendants' motion for summary judgment and dismiss Plaintiff Dr. Edward Baety's race, sex, and disability discrimination and retaliation claims.  (Dkt. 87.)  Plaintiff objects.  (Dkt. 92.)  The Court adopts the recommendation.

## I.    Background

In 2019, Defendant DeKalb County School District (DCSD) hired Plaintiff (an African American) as a Behavior Specialist for the DeKalb-Rockdale Georgia Network for Educational and Therapeutic Support

(GNETS).  (Dkt. 80-2 ¶¶ 4–5, 7.)  Defendant DCSD assigned Plaintiff to Eagle Woods Academy.  (Pl. Dep. at 17:1–9.)  Defendant Michele Summerlin (an African American woman) was the GNETS Executive Director.  (Dkt. 80-2 ¶ 10.)  Desiree Woods (a white woman) was the Director of GNETS and Plaintiff's supervisor until June 2022 when she resigned while Defendant Angela Smith (an African American woman) oversaw the day-to-day GNETS operations at Eagle Woods Academy. (*Id.* ¶¶ 7, 8, 10.)[1]

Plaintiff suffers from Friedrich Ataxia, a degenerative nerve disease affecting mobility in his hands, arms, and legs.  (*Id.* ¶ 31.)  In September 2021, DCSD granted Plaintiff disability accommodations.  (*Id.* ¶ 32.)  In doing so, DCSD allowed Plaintiff to use mobility support devices, agreed not require him to "interact physically with students," provided him a flexible schedule to permit medical appointments, allowed Plaintiff to take frequent breaks away from students, limited his workday to no more than eight hours, and permitted him to apply for family medical leave.  (*Id.*)

---

[1] Woods also filed a discrimination case against Defendants. *See Woods v. DeKalb County Sch. District*, No. 1:23-cv-4457-MLB-JKL (N.D. Ga.).

In January 2022, Plaintiff applied for the GNETS "Coordinator III" position at Shadow Rock Center, a sister location to Eagle Woods Academy. (*Id.* ¶¶ 11–14.) The Coordinator III position was a more senior position than Plaintiff's role as a Behavior Specialist. (*Id.* ¶¶ 9, 29.) Plaintiff had the required qualifications for the position. (*Id.*) A panel of DCSD employees interviewed him and five other candidates, assigning each a score out of 60 points. (*Id.* ¶¶ 15–18.) Plaintiff scored a 42. (*Id.* ¶ 19.) Carlton Vivians (an African American man) scored 52 and got the position. (*Id.* ¶¶ 21–22.) Plaintiff filed a personnel complaint, requesting an investigation into DCSD's hiring practices and alleging he was not hired for the Coordinator III position because of favoritism, preferential treatments, and his disability. (*Id.* ¶ 23.) DCSD's human resources department investigated the complaint and found no unlawful employment action. (*Id.* ¶ 24.)

In October 2022, Plaintiff filed another personnel complaint, this time alleging DCSD violated the portion of his ADA accommodation precluding his physical interaction with students when it assigned him to a class of "violent kids," resulting in him being assaulted by a student, suffering an injury, and missing work. (*Id.* ¶ 33; 71-13 at 7.) DCSD's

human resources department found no ADA violation because Plaintiff had not been asked to interact physically with students. (Dkt. 80-2 ¶ 34.) The human resources department noted that, while his accommodation plan precluded physical interaction with students, it did not preclude him from providing face-to-face interaction and in-person communication with students. (Dkt. 71-13 at 7.) Around the same time, Plaintiff applied to replace Desiree Woods as GNETS Director when Woods resigned. (Dkt. 80-2 ¶ 25.) DCSD did not interview Plaintiff and selected Lila Brown (an African American woman) for the job. (*Id.* ¶¶ 28–30.)

On November 5, 2022, Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC) alleging race, color, sex, age, and disability discrimination, along with retaliation based on his non-selection for the two positions. (*Id.* ¶¶ 48–49.) The EEOC issued Plaintiff a notice of right to sue. (*Id.* ¶ 50.) Plaintiff sued DCSD, Angela Smith, and Michele Summerlin, asserting fourteen claims of race, sex, age, and disability discrimination and retaliation. (Dkt. 1.) He also alleges a hostile work environment and various violations of the ADA. (*Id.*) Defendants moved for summary judgment on all claims. (Dkt. 71.) Plaintiffs opposed and requested leave to file a surreply. (Dkts. 80, 84.)

The Magistrate Judge denied that request and recommended granting Defendants' Motion for Summary Judgment on all claims.  (Dkt. 87.) Plaintiff filed objections.  (Dkt. 92.)

## II.    Standard of Review

### A.    Summary Judgment

Summary judgment is appropriate when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).

### B.    R&R

28 U.S.C. § 636(b)(1) requires district courts to "make a de novo determination of those portions of [an R&R] to which objection is made." Any such objection "must specifically identify the portions of the [R&R] to which objection is made and the specific basis for objection." *McCullars v. Comm'r, SSA*, 825 F. App'x 685, 694 (11th Cir. 2020)[2]; *see United States v. Schultz*, 565 F.3d 1353, 1360 (11th Cir. 2009) ("[A] party

---

[2] The Court recognizes *McCullars* is unpublished and not binding.  The Court cites it and other unpublished cases nevertheless as instructive. *See Searcy v. R.J. Reynolds Tobacco Co.*, 902 F.3d 1342, 1355 n.5 (11th Cir. 2018) ("Unpublished cases do not constitute binding authority and may be relied on only to the extent they are persuasive.").

that wishes to preserve its objection must clearly advise the district court and pinpoint the specific findings that the party disagrees with."). "Where the objections are not specific enough or clear enough to permit the district court to effectively review the magistrate judge's ruling … the district court must ensure only that the R&R is not clearly erroneous or contrary to law.*" Byrd v. Gwinnett Cnty. Sch. Dist.*, 728 F. Supp. 3d 1257, 1264 (N.D. Ga. 2024).

"It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings." *Thomas v. Arn*, 474 U.S. 140, 150 (1985). In most cases, "[a] party failing to object to [an R&R] waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions." *McGriff v. Comm'r, SSA*, 654 F. App'x 469, 472 (11th Cir. 2016). Ultimately, whether objections are filed, a district court "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1).

## III. Discussion

The Magistrate Judge recommends granting summary judgment on all Plaintiff's claims.  He found Defendants articulated legitimate, non-discriminatory, and non-retaliatory reasons for its hiring decisions regarding the positions Plaintiff applied for within GNETS.  He also concluded Plaintiff failed to present sufficient evidence of a racially hostile work environment at Eagle Woods.  Finally, the Magistrate Judge determined Plaintiff was not denied his requested disability accommodations.  (Dkt. 87.)

Plaintiff appears to raise six objections to the R&R.[3]  (Dkt. 92.) They are convoluted and difficult to understand, but the Court has done its best.  If the Court mischaracterizes the objections, the fault lies with Plaintiff.  And to the extent the objections are not "clear enough to permit the district court to effectively review the magistrate judge's ruling," the Court will only ensure the R&R is not "clearly erroneous or … contrary to law." *Schultz*, 565 F.3d at 1360; Fed. R. Civ. P. 72(b).  But even under

---

[3] Plaintiff's organization (or lack thereof) makes it difficult to determine exactly how many objections he raises.  The Court thinks six, and Defendants concur.  (*See* Dkt. 93 at 3.)

a *de novo* standard of review, the Court finds that each objection lacks merit.

## A.    Plaintiff's First Objection—The Surreply

The Magistrate Judge denied Plaintiff's Motion for Leave to File a Surreply.  (Dkt. 84.)  Plaintiff objects to that conclusion in a single sentence: "Baety objects to the denial of the motion for leave to file surreply."  (Dkt. 92 at 2.)  This perfunctory objection falls well short of the specificity necessary to trigger *de novo* review.  *See Schultz*, 565 F.3d at 1360.  But even if it did, the Magistrate Judge properly denied Plaintiff's motion.

Surreplies are permitted "only in unusual circumstances, such as where a movant raises new arguments or facts in a reply brief, or where a party wishes to inform the Court of a new decision or rule implicating the motion under review." *Harris v. F.D.I.C.*, 885 F. Supp. 2d 1296, 1308 (N.D. Ga. 2012).  In his motion seeking a surreply, Plaintiff argued Defendants raised "new arguments" in their Reply about certain portions of his deposition testimony being inadmissible.  (Dkt. 84 at 2–3.) Defendants, however, made that argument in response to Plaintiff's argument that portions of his deposition provided direct evidence of

discrimination.    Because Defendants were simply responding to arguments Plaintiff raised in his response brief, no surreply was necessary.  *See Chemence Med. Prods., Inc. v. Medline Indus., Inc.*, 119 F. Supp. 3d 1376, 1383 (N.D. Ga. 2015) ("[If] the new arguments simply respond to arguments raised in a response brief, no surreply is warranted.").  The Court overrules Plaintiff's first objection.

### B.    Plaintiff's Second Objection—His Additional Facts

Plaintiff's next objects to the Magistrate Judge's treatment of his statement of additional material facts.  (Dkt. 92 at 2–3.)  Plaintiff says the Magistrate Judge "beg[an] a pattern of wholesale discounting of [his] evidence" when, in a footnote, he noted Plaintiff's statement of additional material facts "do little to advance Plaintiff's arguments, as [the facts Plaintiff asserted] are either irrelevant to the merits of the case or conclusory." (Dkt. 92 at 2; Dkt. 87 at n. 1.)

The Court rejects this objection for several reasons.  First, although criticizing the relevance and helpfulness of those facts, the Magistrate Judge said it considered them.  (Dkt. 87 at 4.)  Second, Plaintiff's objection identifies only one statement from his statement of additional material facts that he claims the Magistrate Judge did not properly

consider. He says his "Additional Fact 53"—which involved DCSD's inability to find notes from its interview of Lila Brown for the position of GNETS Director—should have given rise to the inference that the notes would contain information favorable to him. (Dkt. 80-3 ¶ 53; Dkt. 92 at 3.) He cites no authority to suggest a party is entitled to a favorable inference from missing documentation in the absence of spoliation or some other misconduct. He also does not explain exactly what the Magistrate Judge should have inferred or how it would have affected the outcome. In addition, although Plaintiff applied for the Director position, he never received an interview—meaning what happened in Brown's interview had no bearing on his claim. Or at least without any explanation by Plaintiff, the Court cannot discern how any unfavorable inference about the interview of one candidate would support his claim that he was improperly excluded from that position.

Plaintiff makes no effort to explain why his other factual assertions are *not* irrelevant or conclusory as the Magistrate Judge concluded, where the Magistrate Judge purportedly failed to consider them, or how proper consideration of the facts would have altered the outcome of the case. This Court cannot see any possible relevance to Additional Fact

54—that much of Baety's work could be done remotely—as he does not challenge DCSD's requirement that he interact with students in person, just that he shouldn't have to interact "physically" with them.  Similarly, Additional Fact 55—that Plaintiff had surgery and missed work due to injuries he sustained in the classroom—has no bearing on the merits of his ADA claims.  Those claims require a showing of discrimination or a violation of his ADA plan, which the Magistrate Judge found lacking. The Magistrate Judge never assessed the extent of Plaintiff's alleged injuries.    Finally,   additional   Fact   56—stating   that   Plaintiff's performance improvement plan was "based on Maddox's observations"— is irrelevant because Plaintiff remains employed by DCSD and makes no claim arising from that plan.

The Court sees no error—clear or otherwise—in the Magistrate Judge's consideration and assessment of the other facts and overrules this objection.

## C.    Plaintiff's    Third    Objection—His    Response    to Defendants' Facts

Plaintiff next objects to a footnote in which the Magistrate Judge wrote, "Plaintiff's responses to [Defendants' Statement of Material Facts] are largely unhelpful.  In contravention of the local rules, his responses

are lengthy, contain copious amounts of immaterial information, and are argumentative. *See* LR 56.1(B)(2)(a)(2)." (Dkt. 87 at 4.) Plaintiff says this comment demonstrates the Magistrate Judge's "wholesale discounting and summary characterization" of his responses to the Defendants' statement of material facts. (Dkt. 92 at 3.) But, despite noting Plaintiff's responses likely ran afoul of Local Rule 56.1, the Magistrate Judge did not deem Defendants' facts admitted, as that rule would allow him to do. *See* LR 56.1(B)(2)(a)(2). So the Court is unsure which of Plaintiff's responses, if any, the Magistrate Judge "discounted" or how this footnote otherwise impacted the outcome of this case.

Plaintiff identifies only two factual disputes he claims the Magistrate Judge discounted. First, Plaintiff says the Magistrate Judge erred in concluding he reported to Defendant Angela Smith. (Dkt. 92 at 6.) He is correct: the Magistrate Judge assumed Defendant Smith was his supervisor even though that fact was not apparent from the parties' statements of facts. (*See* Dkt. 80-2 ¶¶ 9–10.) Those statements indicate Angela Smith was a Coordinator III and supervised staff at Eagle Woods, but not that she supervised Plaintiff in particular. (*Id.* ¶¶ 10, 12.) Plaintiff, however, does not explain how that error affected the outcome

of the case. Once more, the Court notes it is Plaintiff's duty—not the Court's—to "pinpoint" the Magistrate Judge's alleged errors and explain how they impacted his findings. *See Schultz*, 565 F.3d at 1361. And the Court can find no thread that traces this error about Plaintiff's supervisor into a reversal of the Magistrate Judge's conclusion that Defendants are entitled to summary judgment.

As a second factual dispute, Plaintiff says the Magistrate Judge improperly assumed "solo student contact [was] an essential function of Baety's job" over his objection to that fact in the Defendants' statement of facts. (Dkt. 92 at 5.) It is not clear the Magistrate Judge reached that conclusion or that Plaintiff made that objection in his response at summary judgment. He does not provide a citation for either assertion. The issue before the Magistrate Judge was whether Plaintiff could have face-to-face interaction with students—Defendants insisting face-to-face interaction with students and teachers was an essential function or his job (Dkt. 71-2 at 22); Plaintiff denying it was an essential job requirement but insisting he could do that so long as someone else was present in the event of a physical altercation (Dkt. 80-1 at 16); and the Magistrate Judge concluding Plaintiff could perform the essential function of in-person

student interaction. (Dkt. 87 at 47.) So—contrary to Plaintiff's assertion—it does not appear the Magistrate Judge found solo student contact was essential to his job.

Going beyond Plaintiff's specific objection, the Court sees no error in the Magistrate Judge's consideration of any issue involving Plaintiff's accommodations. Again, the Magistrate Judge concluded Plaintiff's job might require him to have face-to-face interaction with students and that he could do that. (*Id.*) The Magistrate Judge also properly noted the accommodation that Plaintiff not be required to interact physically with students meant he could not be required to restrain any student. (*Id.* at 48.) In other words, it meant Plaintiff could be face-to-face with students but could not be required to physically restrain or physically interact with them. Plaintiff sought to read into that accommodation a requirement that he not be alone with physically aggressive students because—if alone—he might have to restrain or interact physically with a student. The Magistrate Judge noted this, saying Plaintiff "argues he was denied a reasonable accommodation 'by being asked to have face-to-face, in-person interactions *with potentially violent students without someone else*

*to handle physical interactions.*'" (*Id.* (emphasis in original) (citing Dkt. 80-1 at 15).)

But the Magistrate Judge addressed that issue, saying the accommodation granted did not preclude solo, face-to-face interaction with students. (*Id.*) As part of that, the Magistrate Judge noted Plaintiff presented no evidence he sought a "no-solo-interaction" accommodation. And the undisputed evidence showed that, in the letter denying his October 2022 personnel complaint following his physical interaction with a student, Defendants' human resources official told Plaintiff his accommodation did not prohibit him from working with students face-to-face and suggested he consider completing another ADA packet. (Dkts. 87 at 48; 71-13 at 5, 7.) He did not do that. As part of this, the Magistrate Judge also determined Plaintiff had not presented evidence that a no-solo-interaction accommodation would have been reasonable, even if requested. (*Id.* at 49.) The Magistrate Judge then concluded the fact DCSD had other trained staff on-site meant DCSD was not expecting Plaintiff to restrain anyone. (*Id.* at 49-50.)

So the Magistrate Judge concluded evidence that Defendants required him to be in physical proximity to students (even when alone)

15

did not violate his accommodation plan. Plaintiff does not object to those conclusions, and the Court agrees with them. *See Thomas v. Arn*, 474 U.S. 140, 150 (1985) ("It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a *de novo* or any other standard, when neither party objects to those findings.") Specifically, the Court agrees with the Magistrate Judge's conclusion that Plaintiff never sought a "no-solo-interaction" accommodation but now seeks to read into the accommodation given (that he not be required to interact physically with students) a requirement that he not be alone with students. (Dkt. 87 at 49.) And the Court agrees no evidence suggests Defendants violated the terms of Plaintiff's accommodation. Plaintiff presents no evidence any Defendant told him he would have to physically restrain any student. Finally, the undisputed evidence shows Defendants honored Plaintiff's accommodation by having trained staff onsite to intercede if physical intervention was necessary. That a student nevertheless hurt Plaintiff does not undermine that conclusion, since there is no allegation Plaintiff was hurt while restraining a student (which would have violated his accommodation) rather than from a student's unexpected aggression

while in proximity to Plaintiff (as a student might act towards any teacher).

The Court—like the Magistrate Juge—has tried to address precisely the claim Plaintiff asserted in his amended complaint, despite some evolution or revolution of that claim. The Court believes that, in his amended complaint, Plaintiff asserted an accommodation that prevented him from being in physical proximity with a student. The Court concludes that because he alleged Defendant Smith violated his accommodation when she required him to "sit" in the hallway with a student, despite being aware of his accommodation. (Dkt. 26 ¶¶ 94-95.) He did not allege Defendant Smith required him to physically restrain or physically interact with the student. Just that she placed him in physical proximity with the student. Next he alleged Defendants denied his accommodation when he was twice injured by students in September 2022. (*Id.* ¶ 227.) Again, he did not allege he was required to physically restrain a student in any way. Merely that students were able to hurt him. He did not identify any other violations.

Defendants moved for summary judgment, saying the accommodation did not preclude Plaintiff from being in physical

proximity to students (that is face-to-face), it only precluded Plaintiff from physically restraining students or otherwise initiating physical conduct, and Defendants never did that. (Dkt. 71-2 at 22-23.) In his response, Plaintiff acknowledged "his accommodation was truly meant to prevent him from having physical contact with students or physically restraining students." (Dkt. 80-1.) Again, that's not what he alleged in the amended complaint. He did not include the words "restrain" or "physical contact" or "physically" anywhere in his amended complaint. And, at summary judgment, he presented no evidence Defendants violated that rule. Instead, Plaintiff argued the prohibition against him having to physically restrain students somehow gives rise to a larger requirement that he "be protected from coming into physical contact with students"—right back where he started. (Dkt. 80-1.) The record does not support this enlarged reading of the accommodation, since (as Plaintiff concedes) the accommodation merely states he "would not be required to interact physically with students." (Dkt. 26-1 at 4.) Had Plaintiff wanted this larger accommodation, he was required to seek it. That is, after all, what DCSD told him to do in the October 27, 2022 email when it explained his exiting accommodation did not preclude his face-to-face

18

interaction with students but only having to physically restrain them. At any rate, he has not presented evidence from which a jury could conclude Defendants interfered with the accommodation that he not interact physically with students.

The Court thus overrules this objection as well.

### D. Plaintiff's Fourth Objection—Smith's Statements

Plaintiff next objects to the Magistrate Judge's conclusion that certain comments by Defendant Smith don't provide direct evidence of race discrimination. (Dkt. 92 at 7.) He insists Angela Smith's comment to him—"why [are you] doing what a white woman, [Desiree Woods,] [is] telling [you] to"—constitutes direct evidence of racial discrimination. (Dkt. 80-1 at 4.) The Magistrate Judge, however, concluded the comment could not serve as direct evidence of discrimination because Defendant Smith was not a decisionmaker responsible for the alleged discriminatory act. (Dkt. 87 at 19-20.) The Court concurs. Plaintiff presented no evidence Defendant Smith had any influence over any adverse employment action taken against him. So her comments cannot provide direct evidence of a decisionmaker's unlawful animus. *See Harris v. Pub. Health Tr. of Miami-Dade Cnty.*, 82 F.4th 1296, 1301 (11th Cir. 2023)

("While statements made by a decisionmaker—*i.e.*, the one who ultimately fired, demoted, or punished the plaintiff—may constitute direct evidence, remarks by non-decisionmakers … are not direct evidence of discrimination.").  And her alleged comment was unrelated to the adverse employment action at issue in Plaintiff's race discrimination claims—the denial of his applications for promotion.  It fails as direct evidence for that reason as well.  *See id.* ("Remarks unrelated to the decision-making process itself are not direct evidence of discrimination."). The Court overrules Plaintiff's fourth objection.

### E.    Plaintiff's Fifth Objection--*Muldrow*

The Court cannot discern the exact nature of Plaintiff's next objection.  With minimal context—and no citation to the R&R—he claims the Magistrate Judge "set a higher bar for [him] than set out in *Muldrow v. City of St. Louis*, 601 U.S. 346 (2024)."  (Dkt. 92 at 9.)  This objection leaves the Court with far more questions than answers.  He says the Magistrate Judge improperly "required a significance test" but fails to explain: what that test was, where the Magistrate Judge supposedly applied it, which claims the *Muldrow* standard applies to, why *Muldrow* provides the proper standard for those claims, or how application of the

*Muldrow* standard would have affected the outcome of the case.[4]  This is precisely the kind of "frivolous, conclusive, [and] general objection [that] need not be considered by the district court." *Marsden v. Moore*, 847 F.2d 1536, 1548 (11th Cir.1988).  Even if the Court wanted to consider this objection, it would not know where to begin.  So it overrules the objection.

### F.   Plaintiff's Sixth Objection—Convincing Mosaic

Finally, Plaintiff contends the Magistrate Judge improperly failed to evaluate his discrimination claims under the Eleventh Circuit's "convincing mosaic" rubric.  (Dkt. 92 at 11.)  Plaintiff is correct the Magistrate Judge did not do that.  But that's because Plaintiff never argued that method of establishing unlawful discrimination and

---

[4] Plaintiff cites the Supreme Court's holding in *Muldrow* that "[a]lthough an employee must show some harm from a forced transfer to prevail in a Title VII suit, she need not show that the injury satisfies a significance test."  601 U.S. at 350.  The Magistrate did not apply such a test.  (*See* Dkt. 87 at 31.)  And while Plaintiff was eventually transferred, nowhere in his Complaint or Response does he argue his transfer was an adverse employment action underlying his discrimination claims. Indeed, he even clarifies his transfer is "the subject of a subsequent EEOC charge and not made the basis of a cause of action in the instant case."  (Dkt. 92 at 5.)

retaliation or explained how his evidence could satisfy it. Indeed, the Magistrate Judge addressed this:

> Of course, a plaintiff's failure to satisfy the McDonnell Douglas framework does not necessarily doom his Title VII discrimination if he can muster evidence to show a "convincing mosaic of circumstantial evidence" … Plaintiff, however, does not argue that a convincing mosaic exists under this authority, and this Court is loath to make arguments for a party that his counsel did not make.

(Dkt 87 at 28, n. 14.)

The Magistrate Judge's decision was legally sound. Although Plaintiff claims he is "entitled to a convincing mosaic analysis," he cannot expect the Court do pull that argument together for him. *See Vinson v. Macon-Bibb Cnty.*, 2020 WL 2331242, at *12 (M.D. Ga. May 11, 2020) ("[Plaintiffs] dedicate nearly three pages of their brief to explain how a 'convincing mosaic' analysis works, but they never present the evidentiary tiles to construct the mosaic for Brown's unequal pay claim. … It is not the Court's burden to comb through extensive records, like this one, to develop arguments in a parties' favor when such arguments should have been presented to the Court for consideration."), *aff'd sub nom.*, *Vinson v. Tedders*, 844 F. App'x 211, 213 (11th Cir. 2021) ("A plaintiff can also show a 'convincing mosaic' of evidence that allows a

district court to infer discrimination. … [Plaintiff] does not advance this theory in her briefing; accordingly, we consider only the theory that she does advance."); *see also Fils v. City of Aventura*, 647 F.3d 1272, 1284 (11th Cir. 2011) ("To prevail on a particular theory of liability, a party must present that argument to the district court. Our adversarial system requires it; district courts cannot concoct or resurrect arguments neither made nor advanced by the parties.").

And, in any event, the Magistrate Judge indicated "the record does not come close to showing a convincing mosaic of circumstantial evidence to create a genuine issue of fact as to whether DCSD's true motivation was Plaintiff's race, color, or sex."  (Dkt. 87 at 28, n. 14.)  Plaintiff's objection overlooks that conclusion.  In short, Plaintiff was not entitled to an analysis he did not ask for and, even if he did, Plaintiff does not explain how his evidence would have satisfied the convincing mosaic rubric.  The Court overrules Plaintiff's sixth objection.

## IV.   Conclusion

The Court **OVERRULES** Plaintiff's Objections (Dkt. 92) and **ADOPTS** the R&R (Dkt. 87).   Accordingly, the Court **GRANTS** Defendants' Motion for Summary Judgment (Dkt. 71).

**SO ORDERED** this 25th day of February, 2026.

MICHAEL L. BROWN
UNITED STATES DISTRICT JUDGE